McKENZIE v. MICHIGAN CENTRAL RAILROAD CO.

1. CARRIERS—LIVE STOCK—DELAY IN TRANSPORTATION.
    A railroad company is not chargeable with the common-law liability of a common carrier in the transportation of live stock, and is bound only to carry the same with reasonable dispatch.

2. SAME—LIVE STOCK—ASSUMPTION OF RISK.
    Shippers of live stock assume the risk of unavoidable accidents and delays.

3. SAME—LIVE STOCK—CARE TAKER—OPPORTUNITY TO FEED—NEGLIGENCE.
    Where the shipper of live stock sent a care taker with them, and he made no request of the railroad company for an opportunity to water and feed them, in the absence of a special agreement, the company is not liable for neglect to afford such an opportunity.

Error to Shiawassee; Smith, J. Submitted April 12, 1904. (Docket No. 44.) Decided July 7, 1904.

Assumpsit by George McKenzie against the Michigan Central Railroad Company for an alleged breach of a contract to transport certain live stock. There was judgment for plaintiff, and defendant brings error. Reversed.

July 2, 1902, plaintiff shipped a car load of cattle, sheep, calves, and hogs from Chesaning and Owosso. The destination was Detroit. The car left Owosso at 3 p. m., arriving at Jackson at 8:30 p. m., over the Saginaw division of defendant's road. When the train containing plaintiff's car reached Jackson, a through freight train from Chicago, known as "No. 58," containing a full complement of 60 cars, was ready to leave for Detroit. It was held back to permit a regular passenger to precede it. It left Jackson at 9:37 p. m., and arrived at Dexter at 12:36 a. m. In accordance with the rule and custom of defendant, an extra train of live stock coming into Jackson from different divisions of the road was made up for shipments east. It consisted of 13 cars, and left Jackson July 3d at 1:45 a. m. Heavy rains fell during the night, and caused several washouts in the vicinity of Chelsea and Dexter, rendering the tracks temporarily impassable. Gangs of men were promptly placed to repair the washouts as soon as possible; the west-bound track being first repaired. The repairs to the east-bound track were not completed until about 8 p. m. of the same day. Transfers from the west-bound track were made over the east-bound track as rapidly as possible. No. 58 left Dexter at 12:42 p. m. The train containing plaintiff's car left between 2 and 3 p. m. the same day, arriving in the Detroit stockyards about 8 p. m. Plaintiff, alleging negligence on the part of the defendant, sued, and recovered damages.

*Clarence D. Clark*, for appellant.

*Watson & Chapman*, for appellee.

GRANT, J. (*after stating the facts*). 1. The evidence establishes beyond controversy that the defendant exercised due diligence in repairing its road and in moving the blockaded trains upon the east and west of the washouts as soon as the track was repaired. The defendant was therefore not responsible for the delay, and was guilty of no negligence in this regard. The defendant was not

chargeable with the common-law liability of a common carrier, and was bound only to transport the stock with reasonable dispatch. *Heller* v. *Railway Co.*, 109 Mich. 53 (66 N. W. 667, 63 Am. St. Rep. 541).

2. Plaintiff sent a care taker with the stock. He made no request for an opportunity to water and feed them.· The defendant had not contracted to do so. Defendant was not chargeable with the neglect to afford an opportunity to feed and water them until it was requested by the care taker so to do and had refused. But, if it had been impossible to feed and water them, the defendant would not have been liable. Shippers of live stock assume the risk of unavoidable accidents and delays. *Heller* v. *Railway Co.*, supra; *Hengstler* v. *Railroad Co.*, 125 Mich. 530 (84 N. W. 1067).

Reversed, and new trial ordered.

The other Justices concurred.